# Exhibit 1 Complaint



1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA 92660
5  Tel: (949) 706-6464
   Fax: (949) 706-6469
6
   Attorneys for Plaintiff
7

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/08/2024 8:12 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| REBEKA RODRIGUEZ,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>SERVICE LIGHTING AND ELECTRICAL SUPPLIES, INC., a Texas corporation, d/b/a 1000BULBS.COM,<br><br>　　　Defendant. | Case No. 24STCV19914<br><br>**COMPLAINT FOR VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")** |

## I.   INTRODUCTION

Defendant secretly allows a third-party spyware company to eavesdrop on the private conversations of everyone who communicates through the chat feature at www.1000bulbs.com (the "Website"). The spyware company then exploits and monetizes that data.

Nearly a dozen state and federal courts have held that substantially identical conduct violates the California Invasion of Privacy Act ("CIPA").

## II.   JURISDICTION AND VENUE

1. As a Court of general jurisdiction, This Court has jurisdiction over all matters presented to it per the mandates of the California Constitution.

2. Venue is proper in this County in accordance with California Code of Civil Procedure Section 394(b) because "none of the defendants reside in the state." As such, venue is proper "in any county that the plaintiff may designate in his or her complaint."

3. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure Section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national website sales to Californians, such that the website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

## III.   PARTIES

4. Plaintiff is a resident and citizen of California. While physically within California within the statute of limitations period, Plaintiff visited Defendant's website and conducted a brief conversation through the website chat feature. Plaintiff was not advised that the chat was monitored, intercepted, or recorded.

5. Defendant is a Texas corporation that sells electrical supplies and accessories. Defendant also owns, operates, and controls the above website.

## IV. FACTUAL ALLEGATIONS

### A. Background of CIPA.

6. CIPA prohibits wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. "'[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as critical to the purposes of Section 631[.]" *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985)); *Ribas*, 38 Cal. 3d at 360-61 ("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device"). "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]" *Javier*, 2023 WL 114225, at *6.

7. Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.

8. Unlike most companies, Defendant ignores CIPA. Instead, Defendant enables and allows a third party that has no corporate affiliation with Defendant to eavesdrop on all such conversations. Why? Because, as one industry expert notes, *"Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight to make informed business decisions. . . .When people are chatting, you have direct access to their exact pain points.")*. See https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited January 2024) (emphasis added).

9. Defendant's actions are not incidental to facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above, Defendant's actions violate industry norms and the legitimate, reasonable expectations of consumers.

### B. Defendant Pays A Third Party to Intercept Chats During Transmission.

10. To enable the eavesdropping, Defendant secretly pays a third party ("The Third Party") to embed its chat technology code into the chat feature offered on Defendant's Website. Indeed, whenever a consumer chats via Defendant's Website, the chat is routed through The Third Party's servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access.

11. The Third Party's product is a type of automatic routing software that automatically acquires and transmits user chat communications without any active input from either Defendant's employees, agents, or human representatives. The Third Party acquires Website visitors' chat communications by first having its software route them to The Third Party's own computer servers that it owns, controls, and maintains. The secret code enables and allows The Third Party to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications they think they are having with Defendant, even when such conversations are private and contain personally identifiable information ("PII") – as Plaintiff's did. Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

12. Indeed, The Third Party's marketing materials boast that it collects and stores chat transcripts. *(To prevent copycat lawsuits, The Third Party is not identified in this Complaint. However, upon reasonable request, Plaintiff will identify The Third Party and provide Defendant with a fulsome analysis of the technology at issue).*

13. One might reasonably wonder why The Third Party would be interested in intercepting and recording the Website chat interactions between Defendant and unsuspecting visitors to Defendant's Website. There are two reasons, and both involve money.

14. First, The Third Party's chat software can be used to gather and analyze customer data for targeted marketing campaigns. Second, The Third Party's software integrates with social media platforms like Meta and its subsidiaries, Facebook and Kustomer. The integration allows various software sub-systems to share data to operate as a unified system. According to Bloomberg.com, this is all part of Meta's secret "plan to profit from private chats." As Bloomberg explained, Meta's software integration "can manage customer messages from multiple services on one central dashboard. That's central to Meta's plan to make money off of its two messaging apps, WhatsApp and Messenger."

15. So how does it work? First, Meta identifies "user interests" by monitoring a collection of "offsite" user activity such as website visits and interactions (including private chat communications between Defendant and visitors) by "integrating" its software with The Third Party. Second, Meta generates revenue by selling advertising space through its subsidiaries' ability to

identify those offsite user interests. Third and finally, after the chat transcripts intercepted by The Third Party are provided to Meta through "integration", Meta brands like Facebook, Kustomer, and WhatsApp bombard the unsuspecting Website visitors with targeted advertising based upon the user's Website visits and interactions.

16. Through the preceding acts, Meta subsidiaries can freely boast that they can "Transform your support center into a profit generator by bulk messaging specific customer segments based on your unique data…to reengage dissatisfied customers."

17. Indeed, all of the schemers – Defendant, The Third Party, and Meta – profit from secretly exploiting the chat data through targeted social media advertising because "Targeted advertising allows brands to send different messaging to different consumers based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand...." See https://www.adroll.com/blog/what-is-targetedadvertising   (last visited January 2024) (emphasis added).

18. The Third Party does more than merely provide a storage function for Website users' chat communications with Defendant. It is more than the proverbial "tape-recorder" in the hand of Defendant. Instead, The Third Party uses its record of Website users' interaction with Defendant's chat feature for data analytics and marketing/advertising to consumers – indeed, that is why Defendant pays The Third Party for its software.

19. The Third Party's exploitation, monetization, use of, and interaction with the data it gathers through the chat feature on Defendant's Website in real time makes it a third-party interceptor and eavesdropper known to and enabled by Defendant under CIPA, rather than a mere extension or tool of Defendant and/or party to the communication with Website visitors.

20. Given the nature of Defendant's business, visitors often share personal and/or confidential data, in addition to personally identifying information, with Defendant via the Website chat feature. Plaintiff did so.

21. Defendant did not inform Plaintiff that Defendant was secretly allowing, aiding, and abetting The Third Party to intercept and eavesdrop on the conversations during transmission, or that

The Third Party provided data from such transcripts to Meta and similar entities through "integration" of their software.

22. Defendant did not obtain Plaintiff's effective consent for the preceding intrusions, nor did Plaintiff know at the time of the conversation of Defendant's conduct.

23. Within the last year, Plaintiff visited Defendant's Website. Plaintiff – like all visitors – shared personal data and personally identifying information with Defendant via the Website chat feature. Plaintiff used a smart phone (a cellular telephone with integrated computers to enable web browsing). As such, Plaintiff's conversation with Defendant was transmitted from a "cellular radio telephone" as defined by CIPA.

24. By definition, chat communications from a website are transmitted to website visitors by either cellular telephony or landline telephony. *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last visited January 2024).

25. Defendant did not inform Plaintiff that Defendant was secretly allowing, aiding, and abetting a third party to intercept and eavesdrop on the conversations during transmission, or that the third party provided data from such transcripts to Meta through "integration" with Meta software.

26. Defendant did not obtain Plaintiff's effective consent for the preceding intrusions, nor did Plaintiff know at the time of the conversation of Defendant's conduct.

27. **Plaintiff brings this as an individual action with the hope that Defendant will change its practices. If Defendant declines, Plaintiff will amend to add class allegations. Notwithstanding anything to the contrary herein, at this time the amount in controversy does not exceed $75,000.00, exclusive of interest and costs, nor does Plaintiff assert any claims arising under federal law or seek injunctive relief.**

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Violations of the California Invasion of Privacy Act

Cal. Penal Code § 631

28. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". ***Here, Defendant violates the third prong, as set forth above, by "aiding, abetting, and conspiring" to allow a third party to intercept, eavesdrop upon, learn, share, and monetize the contents of Defendant's chat conversations.***

29. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

30. The spyware embedded into the chat feature of Defendant's Website to record and eavesdrop upon Plaintiff's communications qualifies as a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct alleged herein.

31. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Defendant's website to be recorded. Defendant also aided and abetted a third party to eavesdrop upon such conversations during transmission and in real time.

32. Plaintiff did not effectively consent to any of Defendant's actions.

33. In numerous materially identical cases, courts have held that the above-described allegations state viable claims for violations of section 631(a) of CIPA. *See Licea v. Jockey*

*International*, L.A.S.C. Case. No. 23STCV02906 (order overruling Demurrer dated August 11, 2023); *Licea v. Men's Wearhouse*, L.A.S.C. Case No. 23STCV02964 (order overruling Demurrer dated July 24, 2023); *Licea v. MalwareBytes, Inc.*, San Bernardino Superior Court Case No. 22-24245 (order overruling Demurrer dated July 19, 2023); *Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, *4 (order denying Motion to Dismiss dated February 3, 2023) (*"Byars contends that Goodyear, using a third-party service, "intercepts in real time" a website visitors' chat conversation. Byars alleges that, using the chat conversation, website visitors share sensitive personal information. Because Byars has pled sufficient facts to show the contents of the communications and that the communications were intercepted, Byars has sufficiently stated a claim under § 631(a).*") (emphasis added).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order declaring Defendant's conduct violates CIPA and in favor of Plaintiff on the causes of action asserted herein;
2. Statutory damages pursuant to CIPA; and
3. All other relief at law that may be appropriate, including fees and costs.

Dated: August 8, 2024

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff